UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
KENNETH OWEN BROWNE,                          :

               Plaintiff,                          :        <u>OPINION AND ORDER</u>

         -against-                          :
                                    14 Civ. 1952 (GWG)
COMMISSIONER OF SOCIAL SECURITY,              :

              Defendant.                          :
----------------------------------------------------------------x
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

       Plaintiff Kenneth Owen Browne brings this action under 42 U.S.C. § 405(g) to obtain

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

denying his claim for disability insurance benefits and supplemental security income under the

Social Security Act.  Browne moved for judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c), and the Commissioner cross-moved for judgment on the pleadings.[1]  The parties

consented to having this matter decided by a United States Magistrate Judge pursuant to 28

U.S.C. § 636(c).  For the reasons stated below, the Commissioner's motion is granted and

Browne's motion is denied.

I.     <u>BACKGROUND</u>

     A.     <u>Browne's Claim for Benefits and Procedural History</u>

       Browne filed applications for Social Security disability insurance benefits and

supplemental security income on April 12, 2011, alleging disability as of December 30, 2007.

---

     [1]  <u>See</u> Motion for Judgment on the Pleadings, filed Oct. 23, 2014 (Docket # 15) ("Pl.
Mot."); Memorandum of Law, filed Oct. 23, 2014 (Docket # 16) ("Pl. Mem."); Cross Motion for
Judgment on the Pleadings, filed Feb. 9, 2015 (Docket # 22); Memorandum of Law in Support
of the Acting Commissioner's Motion for Judgment on the Pleadings, filed Feb. 9, 2015 (Docket
# 23) ("Def. Mem.").

See Administrative Record, filed Sept. 16, 2014 (Docket # 12) ("R."), at 172-82.  Browne was previously employed as a baggage handler at an airport in the Virgin Islands.  R. 34-35.  He stopped working in 2008 when he was fired.  R. 35.

The Social Security Administration denied Browne's applications on June 29, 2011.  R. 66-71.  On July 6, 2011, Browne requested a hearing before an Administrative Law Judge ("ALJ").  R. 72-73.  A hearing before an ALJ was held on December 19, 2012.  R. 29-51.  On January 2, 2013, the ALJ issued a decision finding that Browne was not disabled through the date of the decision.  R. 17.  The Appeals Council denied Browne's request for review on January 10, 2014, making the ALJ's determination the Commissioner's final decision.  R. 1-4.

B.    The Administrative Record

Browne and the Commissioner have each provided a recitation of the relevant medical evidence contained in the administrative record.  See Pl. Mot. at 2-9; Pl. Mem. at 1-9;  Def. Mem. at 2-7.  The Court adopts the parties' discussions of the medical evidence, which do not conflict in any material way, as accurate and complete for purposes of the issues raised in this suit.  We discuss the portions of the record pertinent to the adjudication of this case in section III below.

C.    The Hearing Before the ALJ

A hearing before ALJ James Kearns was held on December 19, 2012.  See R. 29-51. Browne was represented at the hearing by an attorney.  R. 29.  Browne testified that he was born on September 13, 1959, is 5'4", and weighs 179 lbs.  R. 32-33.  He was 48 years old on his alleged onset date.  See R. 205.  He currently lives in an apartment with his sister in the Bronx, R. 33, 209, and he has a ninth-grade education, R. 34.  The last time Browne worked was in 2008, working as a baggage handler at an airport in the Virgin Islands.  R. 34-35.  He stopped

2

working because he was fired, and he subsequently traveled to New York.  R. 35.

Browne testified that he cannot work because he is "suffering with [his] back and [his] knees and [his] hands.  And [he] also get[s] dizzy spell[s]."  R. 38.  With respect to his back, he suffers from "arthritis into [his] hips," which causes his left leg to get numb.  Id.  As for his hands, Browne testified that he cannot grip with either hand because he does not have the strength, and that his right hand is worse than his left.  R. 38-39.

Browne sees Dr. Regina Gurevich at Doctors Unlimited in the Bronx every two weeks. R. 39.  He takes five different kinds of medications per day, including one for dizziness, one for numbness, and one for pain.  R. 39-40.  Browne reported that the medications cause nausea and drowsiness, and help only "[s]ometimes."  R. 40-41.

The ALJ asked Browne about his activities on a typical day.  R. 41.  Browne testified that he will just stay at home and watch TV or go to sleep.  Id.  He has trouble getting out of bed in the morning because his whole body gets stiff.  Id.  Once he is out of bed, he will sit for a while, take his medication, and then watch TV.  Id.  He does not go out of the house regularly because he cannot walk too much and he will have to stop and pause.  Id.  He also has problems with his knees when going up and down stairs, and he tries to avoid putting pressure on them.  Id. Browne testified that his sister does all of the housework, such as laundry, and goes grocery shopping.  R. 42.  He also testified that he has trouble remembering things.  Id.

Browne testified that the most he can lift is about five pounds because of his wrist and that he can walk for half of a block.  R. 43.  He also stated that he can sit for approximately 15 minutes and stand for approximately 10 minutes before he starts to have problems.  R. 43-44.

The ALJ asked Browne to testify as to his asserted learning disability.  R. 44.  Browne stated that he struggles with reading and writing, and that he went through special education.  Id.

When filling out applications, he is only able to write his name and address.  R. 45.  His sister

often helps him fill out forms.  Id.

Vocational expert Yaakov Taitz also testified at the hearing.  R. 45-49; see R. 154.  Taitz

testified that Browne's work history was as a baggage handler, Dictionary of Occupational Titles

("DOT") code 912.663-010, which is a "heavy" exertion position with a specific vocational

preparation ("SVP") of 4.  R. 46.  He testified that a hypothetical individual with this work

history, limited to the "light exertional level," who could only do simple and repetitive tasks and

could frequently, but not constantly, handle objects would not be able to do that job.  R. 46.

Taitz testified that the same hypothetical individual would be able to perform the following jobs:

bagger, DOT code 920.687-018, which is a light exertion job with an SVP of 1 and has 1,600

jobs in the local economy and 66,000 jobs in the national economy; cleaner, DOT code 323.687-

014, which is a light exertion job with an SVP of 2 and has 8,000 jobs in the local economy and

877,000 jobs in the national economy; courier/deliverer, DOT code 230.663-010, which is a light

exertion job with an SVP of 2 and has 7,100 jobs in the local economy and 83,000 jobs in the

national economy; and deli cutter, DOT code 316.687-018, which has 6,000 jobs in the local

economy and 775,000 in the national economy.[2]  R. 47-48.  He also stated that he could also

"give [the ALJ] fast food worker," but did not testify any further as to that job.  R. 48.  Taitz

testified that if a person was absent for three or more days per month or off task over 15% of the

---

[2]  The DOT has been replaced by an online database called the Occupational Information
Network or the O*NET.  See Dictionary of Occupational Titles Fourth Edition, Revised 1991,
U.S. Dep't of Labor, http://www.oalj.dol.gov/libdot.htm.  The O*NET defines SVP as the
"amount of lapsed time required by a typical worker to learn the techniques, acquire the
information, and develop the facility needed for average performance in a specific job-worker
situation."  O*NET OnLine Help, https://www.onetonline.org/help/online/svp.  The SVP
"levels" correspond to time periods.  For example, Level 2 is "[a]nything beyond short
demonstration up to and including 1 month."  Id.  Level 1 is a "[s]hort demonstration only."  Id.

time, "he couldn't do those jobs."  R. 49.

D.       The ALJ's Decision

On January 2, 2013, the ALJ issued a decision finding that Browne was not disabled

from December 30, 2007 through January 2, 2013, the date of the decision.  R. 6-17.  The ALJ

found that Browne has not engaged in substantial gainful activity since December 30, 2007, the

alleged onset date of his disability.  R. 11.  Next, the ALJ found that Browne has the following

"severe" impairments: "degenerative disc disease at L5-S1, osteoarthritis of the left knee, and

bilateral carpel tunnel syndrome [('CTS')]."  Id.  The ALJ also found that Browne's alleged

"dizzy spells" are "non-medically determinable," because while a consultative examiner stated

Browne may have "benign positional vertigo" and an MRI of the brain revealed an "abnormal

clivus," Browne had not undergone any diagnostic tests to confirm vertigo nor had any "formal

diagnosis related to [Browne's] MRI."  R. 11-12.  Further, the ALJ found Browne's hypertension

to be "non-severe" because he has not alleged any functional limitations due to the impairment.

R. 12.

The ALJ then determined that Browne does not have an impairment or combination of

impairments that "meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1."  R. 12.  First, the ALJ found that Browne's osteoarthritis

of the left knee and bilateral CTS fail to meet or medically equal listing 1.02.  Id.  The ALJ

found that Browne "does not have an impairment characterized by a gross anatomical deformity

and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion

of the affected joint."  Id.  The ALJ further noted that there were no "findings on appropriate

medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the

affected joints with involvement of one major peripheral weight-bearing joint resulting in

inability to ambulate effectively or involvement of one major peripheral joint in each

upper extremity resulting in inability to perform fine and gross movements effectively." Id.

Second, the ALJ found that the severity of Browne's degenerative disc disease of the lumbar

spine "fails to meet or medically equal listing 1.04." Id. The ALJ noted that Browne's

"impairment does not result in compromise of a nerve root or the spinal cord with evidence of

nerve root compression, spinal arachnoidities, or lumbar spinal stenosis." Id.

   Next, the ALJ found that Browne has the "residual functional capacity [('RFC')] to

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, [Browne]

can lift up to 20 pounds occasionally and up to ten pounds frequently, and can stand and/or walk

at least six hours in an eight-hour workday. Additionally, [Browne] is limited to simple and

repetitive tasks, and only frequent handling." Id.

   With respect to Browne's back pain, the ALJ noted that Browne testified that getting out

of bed is difficult due to stiffness and that he has difficulty with personal care, bending over,

standing, walking, sitting, climbing stairs, and squatting. R. 13. The ALJ recognized that

Browne testified that he can walk for one and a half blocks, lift up to five pounds, and stand for

about ten minutes, and that he experiences pain "all of the time and always uses a cane." Id.

The ALJ also noted Browne's complaints as to his lower back pain "radiating to his right leg,

and causing numbness and tingling, as well as pain in his right buttocks from sitting." Id. He

noted that an MRI of Browne's lumbar spine revealed a degenerative disc at L5-S1 and an

osteoarthritic ridge at L4-L5 and L5-S1. Id. The ALJ also noted that Browne started treatment

with Dr. Gurevich, who referred Browne to a physical therapist where he underwent treatment

consisting of medication and physical therapy three times per week. Id. The physical therapist

noted "tenderness and spasms in [Browne's] lower back." Id. Browne also underwent a

consultative examination with Dr. Dipti Joshi.  Id.  Browne "reported that his back pain was a six out of ten, and he feels better after repositioning himself in a sitting position."  Id.  Dr. Joshi observed that Browne had no difficulty walking on his heels and toes, rising from a chair, or doing a full squat and that Browne needed no help changing or getting on and off the exam table. Id.  Dr. Joshi also observed full range of motion in the cervical spine, shoulders, and hips.  Id. The ALJ noted that while Browne is currently taking pain medication, which Browne alleges causes drowsiness, Browne continues to allege experiencing constant pain.  Id.

With respect to Browne's osteoarthritis of the left knee, the ALJ noted that Browne reported the pain to be a "seven out of ten."  Id.  He also noted that Dr. Gurevich "observed tenderness, stiffness, and swelling in the left knee" and that Browne reported relief of pain by using medication.  Id.  However, Dr. Joshi observed full range of motion in Browne's knees and ankles during the consultative examination.  Id.  The ALJ concluded that, with the exception of Dr. Gurevich's observations, the record contains "no objective findings documenting [Browne's] knee impairment such as an MRI or X-rays."  Id.

As for Browne's bilateral CTS, the ALJ noted that Browne alleges that he has difficulty using his hands — specifically, that he cannot grip with his hands, he has difficulty holding objects, he "always uses a brace/splint," and he reported "bilateral pain in his thumbs, which extends into the tendons, which he describes as being five out of ten."  R. 13-14.  Browne reported that the pain becomes "worse when he grips and describes the pain as 'achy.'"  R. 14. An X-ray of both wrists did not reveal any remarkable findings, and Dr. Joshi observed full range of motion in the wrists and arms during Browne's consultative examination.  Id.  Dr. Joshi also observed, however, that Browne had signs of tendinitis at the base of both thumbs.  Id.  The ALJ concluded that, with the exception of his medication, there is "no evidence in the record

indicating that [Browne] is pursuing active treatment with respect to his CTS."  Id.  Thus, the ALJ ultimately concluded that, "[a]fter careful consideration of the evidence, . . . [Browne's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in th[e] decision."  Id.

The ALJ then discussed the credibility of Browne's statements.  He found that Browne's statements are "not entirely credible because there are numerous inconsistencies in his allegations, and the medical evidence does not support his allegations."  Id.  Specifically, although Browne asserted that he can only walk one and a half blocks and lift up to five pounds, he reported in an "Activities of Daily Living" form that he can walk up to five blocks and go shopping, and he further alleges that he prepares meals all by himself, does laundry, dresses himself, and irons.  Id.  The ALJ concluded that Browne's reported activities of daily living reveal a "fairly active lifestyle."  Id.  The ALJ also noted that while Browne states that he "needs a cane," his treating physician, Dr. Gurevich, stated that he does not require the use of a cane to ambulate, and the consultative examiner, Dr. Joshi, observed that he did not need an assistive device.  Id.

The ALJ accorded "some weight" to the opinion of Browne's treating physician, Dr. Gurevich, because "she has treated [Browne's] back pain since 2011."  Id.  Dr. Gurevich stated that Browne can "occasionally lift and/or carry up to ten pounds . . . and sit for four hours, stand for two hours, and walk for three hours at one time without interruption"; he can "sit for five hours, stand for three hours, and walk for four hours in an eight-hour workday"; he can "frequently reach overhead and can only occasionally handle, finger, feel, and push/pull"; he can "occasionally operate foot controls with his right foot and never with his left foot"; he can

occasionally climb stairs and ramps, stoop, and kneel, but he can "never climb ladders or scaffolds, balance, crouch, or crawl"; he can "never work with unprotected heights, moving mechanical parts, or vibrations, and can only occasionally operate a motor-vehicle, work with humidity, wetness, dust, odors, fumes, pulmonary irritants, and extreme cold and heat"; he "cannot walk a block at a reasonable pace on rough or uneven surfaces or sort, handle, or use paper and/or files"; and his pain "frequently interferes with his attention and concentration and moderately limits his ability to deal with work stress."  Id.  However, the ALJ also found that Dr. Gurevich provided "inconsistent opinions" regarding Browne's limitations, and provided examples of such inconsistencies.  R.14-15.  He noted that while Dr. Gurevich initially opined that Browne could sit for a total of five hours in an eight hour workday in the "Medical Source Statement of the Ability to do Work-Related Activities," she later stated that Browne could only sit for a total of two hours in the "Medical Source Statement."  R. 14-15.  Further, Dr. Gurevich first stated that Browne could stand for two hours and walk for three hours at a time, but she later indicated that Browne could only stand and walk for 30 minutes.  R. 15.

Instead, the ALJ accorded "great weight" to the opinion of the consultative examiner, Dr. Joshi, which stated that Browne has "mild limitations in performing repetitive fine motor activities using his thumbs and he should avoid heavy lifting, carrying, pushing, and pulling." Id.  The ALJ explained that Dr. Joshi conducted a "thorough in-person examination" and that her conclusions are "consistent" with Browne's own account of his activities of daily living, which include cooking, laundry, and ironing.  Id.

The ALJ further concluded that his RFC assessment is supported by (1) the "documentation of [Browne's] disc degeneration at L5-S1, which supports a finding that he should be limited to light work"; (2) "Dr. Joshi's observations of tenderness in [Browne's] wrists

9

and her opinion that [Browne] should have mild limitations in performing repetitive fine motor activities using his thumbs support [Browne] being limited to frequent handling"; and (3) his crediting Browne's allegations that his medications result in drowsiness, resulting in "further limiting [Browne] to simple and repetitive tasks."  Id.

The ALJ also concluded that Browne is unable to perform his past relevant work as a baggage handler because it is at a "heavy exertion level" and that he is limited to "less than a full range of light work" due to additional limitations.  Id.  However, the ALJ accepted the vocational expert's testimony as to existence of jobs in the national economy that an individual with Browne's age, education, work experience, and RFC could perform.  R. 16.

After "[c]onsidering [Browne's] age, education, work experience, and residual functional capacity," as well as the testimony of the vocational expert, the ALJ concluded that Browne is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and therefore "[a] finding of 'not disabled' is . . . appropriate."  Id.

II.     APPLICABLE LAW

A.     Scope of Judicial Review Under 42 U.S.C. §§ 405(g) and 1383(c)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citation and quotation marks omitted); accord Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008); see also 42 U.S.C. § 405(g) (2012) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); id. § 1383(c)(3) ("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g) . . . .").  Substantial evidence is "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Burgess, 537 F.3d at 127-28; Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted); see McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citation omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).  The Second Circuit has characterized the "substantial evidence" standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447-48 (2d Cir. 2012) (per curiam) (citation omitted).  "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. at 448 (emphasis in original) (citation and internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citation and internal quotation marks omitted).

11

B.    Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); accord id.

§ 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his

"impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy."  Id. §§ 423(d)(2)(A),

1382c(a)(3)(B).

To evaluate a claim of disability, the Commissioner is required to examine: "(1) the

objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective

evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037

(2d Cir. 1983) (per curiam) (citations omitted).

Regulations issued pursuant to the Social Security Act set forth a five-step process that

the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1,

404.1520(a)(4) (2014); see also Burgess, 537 F.3d at 120 (describing the five-step process).

First, the Commissioner must determine whether the claimant is currently engaged in any

"substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  Second, if the claimant is not

engaged in substantial gainful activity, the Commissioner must decide if the claimant has a

"severe medically determinable physical or mental impairment," id. § 404.1520(a)(4)(ii), which

is an impairment or combination of impairments that "significantly limits [the claimant's]

physical or mental ability to do basic work activities," id. § 404.1520(c).  Third, if the claimant's

impairment is severe and "meets or equals" one of the listings in 20 C.F.R. Part 404, Subpart P,

Appendix 1, and "meets the duration requirement," the claimant must be found disabled.  Id.

§ 404.1520(a)(4)(iii).  Fourth, if the claimant's impairment does not meet or equal one of the

listed impairments, or does not meet the duration requirement, the Commissioner must review

the claimant's residual functional capacity to determine if the claimant is able to do the work he

or she has done in the past, i.e., "past relevant work."  Id. § 404.1520(a)(4)(iv).  If the claimant is

able to do such work, he or she is not disabled.  Id.  Finally, if the claimant is unable to perform

past relevant work, the Commissioner must decide if the claimant's residual functional capacity,

in addition to his or her age, education, and work experience, permit the claimant to do other

work.  Id. § 404.1520(a)(4)(v).  If the claimant cannot perform other work, he or she will be

deemed disabled.  Id.  The claimant bears the burden of proof on all of these steps except the

final one — that is, proving that there is other work the claimant can perform.  See Poupore v.

Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.    DISCUSSION

        Browne seeks remand of the ALJ's decision on the grounds that the ALJ failed to apply

the correct legal standard to the opinion of his treating physician and that the ALJ's decision was

not supported by substantial evidence.  See Pl. Mem. at 1-9.  We address each argument in turn.

        A.    Treating Physician Rule

        In general, the ALJ must give "more weight to opinions" of a claimant's treating

physician when determining if the claimant is disabled.  See 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); see also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (the ALJ must give

"a measure of deference to the medical opinion of a claimant's treating physician") (citation

omitted).   Treating physicians "may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone or from reports of individual

examinations, such as consultative examinations."   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

An ALJ must accord "controlling weight" to a treating physician's medical opinion as to the

nature and severity of a claimant's impairments if the opinion "is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the claimant's] case record."   Id. §§ 404.1527(c)(2), 416.927(c)(2).

Inversely, the opinions of a treating physician "need not be given controlling weight where they

are contradicted by other substantial evidence in the record."   Veino v. Barnhart, 312 F.3d 578,

588 (2d Cir. 2002) (citations omitted).

        If the ALJ does not give controlling weight to a treating physician's opinion, the ALJ

must provide "good reasons" for the weight given to that opinion.   Halloran, 362 F.3d at 32-33

(citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)) (internal quotation marks omitted).

When assessing how much weight to give the treating sources opinion, the ALJ should consider

factors set forth in the Commissioner's regulations, which include: (i) the length of the treatment

relationship and the frequency of the examination; (ii) the nature and extent of the treatment

relationship; (iii) the supportability of the opinion with relevant evidence, particularly medical

signs and laboratory findings; (iv) the consistency of the opinion with the record as a whole; (v)

whether the opinion is from a specialist; and (vi) other relevant evidence.   See 20 C.F.R.

§§ 404.1527(c), 416.927(c); see also Ellington v. Astrue, 641 F. Supp. 2d 322, 330-31 (S.D.N.Y.

2009) ("the ALJ should weigh the treating physician's opinion along with other evidence

according to the factors" listed in 20 C.F.R. § 404.1527(c)(2)-(6)).   Courts "do not hesitate to

remand when the Commissioner has not provided 'good reasons' for the weight given to a

treating physician[']s opinion and [should] continue remanding when [they] encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."  Halloran, 362 F.3d at 33.

Here, the ALJ accorded only "some weight" to Browne's treating physician, Dr. Gurevich, because "Dr. Gurevich provides inconsistent opinions for [Browne's] limitations."  R. 14.  In support, the ALJ pointed out that Dr. Gurevich opined in the "Medical Source Statement of the Ability to do Work-Related Activities" (dated July 21, 2011, R. 263) that Browne can sit for a total of five hours in an eight-hour workday and can stand for two hours and walk for three hours at one time.  R. 14-15, 259.  The ALJ noted, however, that in a subsequent "Medical Source Statement" (dated September 8, 2012, R. 348), Dr. Gurevich opined that Browne can sit for a total of only two hours in an eight-hour workday and can stand and walk for only 30 minutes at one time.  R. 15, 344.  Browne argues that the ALJ improperly concluded that Dr. Gurevich provided inconsistent opinions.  He argues that "[t]here is no inconsistency in the treating physician's assessments" because Browne's "condition deteriorated over time."  Pl. Mem. at 4.

Dr. Gurevich's second "Medical Source Statement," however, does not reflect that Browne's condition deteriorated over time.  To the contrary, Dr. Gurevich stated in that document that Browne's restriction "existed and persisted" since at least July 2011 up until the date of the assessment, September 8, 2012.  R. 348.  Thus, the ALJ could reasonably conclude that this later assessment of restrictions was inconsistent with the earlier assessment, which was itself dated July 21, 2011.  Moreover, Browne points to no evidence that his condition deteriorated in July 2011 or in the time period through September 8, 2012.  Thus, we do not accept Browne's argument that the ALJ could not properly find that Dr. Gurevich's two

assessments were inconsistent.

Further, Dr. Gurevich's opinion is inconsistent with Browne's self-reported activities of daily living and his consultative examination with Dr. Joshi, whom the ALJ accorded "great weight," R. 15.  In April 2011, R. 219, Browne reported that he can prepare his own meals, R. 211, do ironing and laundry, R. 212, go out alone and use public transportation, id., go shopping, R. 213, and go out to the clinic several times per week, R. 214.  He also stated that he can walk for five blocks before he has to stop and rest.  R. 216.  Dr. Joshi found that Browne had normal gait, could walk on his heels and toes without difficulty, do a full squat, and rise from a chair without difficulty.  R. 252.  Dr. Joshi noted that Browne did not use assistive devices and needed no help changing for the exam or getting on and off the exam table.  Id.  Dr. Joshi also noted Browne had full range of motion in his lumbar spine, cervical spines, shoulders, elbows, wrists, hips, knees, and ankles.  R. 253.  She also found 5/5 strength in Browne's upper and lower extremities and 4+/5 grip strength, with hand and finger dexterity intact.  Id.  Dr. Joshi concluded that Browne had only "mild limits" with gripping and performing repetitive fine motor activities using his thumbs and advised that Browne should avoid "heavy lifting, carrying, pushing, and pulling."  R. 254.

Given that Dr. Gurevich's opinion was inconsistent with other substantial medical evidence in the record, we find that it was proper for the ALJ to give it less than controlling weight.  See, e.g., Van Dien v. Barnhart, 2006 WL 785281, at *13 (S.D.N.Y. Mar. 24, 2006) ("The ALJ appropriately gave less than controlling weight to [the treating physician's] opinion and relied more heavily on the evidence provided in the consultative opinions."); see generally Halloran, 362 F.3d at 32 (finding that treating physician's opinions should not be afforded controlling weight where they were "not particularly informative and were not consistent with

those of several other medical experts").

For the foregoing reasons, we find the ALJ did not violate the treating physician rule.

B.      Substantial Evidence

Browne asserts that "the medical evidence does not support the ALJ's findings that [Browne] can perform light work." Pl. Mem. at 8.  He also argues that the ALJ failed to consider his obesity and the side effects of his medication.  Id. at 6-7.

The ALJ found that Browne has the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)."  R. 12.  The ALJ found that Browne "can lift up to 20 pounds occasionally and up to ten pounds frequently, and can stand and/or walk at least six hours in an eight-hour workday.  Additionally, [Browne] is limited to simple and repetitive tasks, and only frequent handling."  R. 12.  Light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying
> of objects weighing up to 10 pounds.  Even though the weight lifted may be very
> little, a job is in this category when it requires a good deal of walking or standing,
> or when it involves sitting most of the time with some pushing and pulling of arm
> or leg controls.  To be considered capable of performing a full or wide range of
> light work, [a claimant] must have the ability to do substantially all of these
> activities.  If someone can do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

Browne first argues that the ALJ's findings are not supported by substantial evidence.  Pl. Mem. at 8.  Browne points to the fact that Dr. Gurevich opined that he could only stand or walk for a total of two hours in an eight-hour day, and that he could never lift more than 10 pounds. Id. (citing R. 342-48).  However, as discussed above, the ALJ did not err when he assigned only "some weight" to the opinion of Dr. Gurevich while according "great weight" to the opinion of Dr. Joshi.  In explaining his decision, the ALJ highlighted the objective medical evidence in the

record supporting his conclusion that Browne has the RFC to perform light work with certain additional limitations.

With respect to Browne's alleged back pain, an MRI of Browne's lumbosacral spine revealed a degenerative disc at L5-S1 and osteoarthritic ridges at L4-L5 and L5-S1.  R. 250. However, Dr. Joshi also observed full range of motion in his cervical and lumbar spines, shoulders, and hips, R. 253, and that Browne feels better after repositioning himself in a sitting position, R. 251.  Dr. Joshi opined that Browne should avoid only "heavy lifting, carrying, pushing, and pulling."  R. 254.

With respect to the osteoarthritis of the left knee, Browne reported his pain is a seven out of ten and that Dr. Gurevich observed tenderness, stiffness, and swelling in the left knee.  R. 271-72.  However, Browne reported to Dr. Gurevich that he felt relief of pain using medication. R. 272.  Dr. Joshi observed that he had full range of motion in his knees and ankles.  R. 253.  Dr. Joshi also observed that Browne could walk on his heels and toes without difficulty, perform a full squat, used no assistive devices, and was able to rise from a chair without difficulty.  R. 252. As the ALJ noted, "with the exception of Dr. Gurevich's observations, the record contains no objective findings documenting [Browne's] knee impairment such as an MRI or X-rays."  R. 13.

With respect to his alleged CTS, Browne testified that he cannot grip with his hands and has difficulty holding objects.  R. 38-39, 215.  The ALJ noted that Browne reported "bilateral pain in his thumbs, which extends into the tendons which he describes as being five out of ten," and that he always uses a "brace/splint."  R. 13-14 (citing R. 251).  However, an X-ray of both wrists did not reveal any remarkable findings, R. 389, and Dr. Joshi observed full range of motion in his wrists and arms, though she did observe signs of tendinitis at the base of both thumbs and opined that Browne had mild limits with gripping and mild limits with performing

18

repetitive fine motor activities, R. 253-54.  The ALJ noted that, with the exception of

medication, there is no evidence that Browne is pursuing "active treatment" with respect to his

CTS.  R. 14.

Importantly, as the ALJ noted, Browne reported numerous activities of daily living that

supported the conclusion that Browne could do light work.  R. 14, 15.  The record reflects that

Browne reported that he can prepare his own meals, R. 211, do ironing and laundry, R. 212, go

out alone and use public transportation, id., go shopping, R. 213, go out to the clinic several

times per times per week, R. 214, and walk for five blocks before he has to stop and rest, R. 216.

In light of this evidence, there is substantial medical evidence in the record to support the

ALJ's determination that Browne retains the RFC to do light work with certain limitations

described by the ALJ.

The ALJ also properly determined that "[c]onsidering [Browne's] age, education, work

experience, and residual functional capacity, there are jobs that exist in significant numbers in

the national economy that [Browne] can perform."  R. 16.  The vocational expert testified that

various "light exertion" jobs exist that a person with Browne's limitations would be capable of

performing.  See R. 46-48.  The vocational expert used the DOT to opine that Browne could

work as bagger, a cleaner, a courier, and a deli cutter, all of which are jobs that exist in

significant numbers in the national economy.  R. 47-48.  The ALJ properly relied on the

vocational expert's testimony regarding this issue.  See Dumas v. Schweiker, 712 F.2d 1545,

1553-54 (2d Cir. 1983) (vocational expert's testimony on the availability of sedentary jobs

provided substantial evidence for the ALJ's finding on this issue); accord Santos v. Comm'r of

Soc. Sec., 2013 WL 5883345, at *7 (S.D.N.Y. Oct. 28, 2013).  In sum, there is substantial

evidence to support the ALJ's finding that there existed substantial gainful employment that

Browne would be capable of performing.

Browne argues that the ALJ erred in failing to find that his obesity has an impact on the severity of his medical condition.  Pl. Mem. at 6-7.  However, Browne did not raise his obesity as an impairment or limitation until he filed his brief in this case.  He contends that his Body Mass Index ("BMI") is 30.7, which is obese, and that while he testified about his height and weight, "[n]owhere in [the ALJ's] decision did the ALJ specifically analyze the impact of [Browne's] obesity on his Residual Functional Capacity Assessment or on his ability to work." Id. at 6.

Obesity may be considered "severe" — and thus medically equal to a listed disability — if "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  See SSR 02-1p, Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57859, 57861-62 (Sept. 12, 2002).  Thus, an ALJ must consider the effects of obesity when evaluating disability.  See SSR 00-3p, Titles II and XVI: Evaluation of Obesity, 65 Fed. Reg. 31039, 31039 (May 15, 2000).  However, "obesity is not in and of itself a disability," and "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand."  Guadalupe v. Barnhart, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citations omitted).  "[W]here the record contains evidence indicating limitation of function due to obesity, the ALJ must consider the effect of obesity on the claimant's ability to do basic work activities at steps two through four of the sequential evaluation process."  Battle v. Colvin, 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014) (citation omitted).  "'Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant

factor in relation to the claimant's ability to perform work related activities.'" Id. (quoting

Farnham v. Astrue, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011)) (citing cases); accord Cahill v.

Colvin, 2014 WL 7392895, at *27 (S.D.N.Y. Dec. 29, 2014).

    While Browne testified to his height and weight during the hearing, R. 32-33, the record

is otherwise devoid of any evidence that his obesity limits his ability to function.  Neither

Browne's treating physician, Dr. Gurevich, nor the consultative examiner, Dr. Joshi, refer to

Browne's obesity as affecting his functioning.  See R. 251-54, 258-63, 291, 342-48, 359.

Further, Browne provides no explanation as to how a proper consideration of his obesity would

indicate a lack of substantial evidence for the ALJ's determination.  See generally Britt v.

Astrue, 486 F. App'x 161, 163 (2d Cir. 2012) (ALJ did not err in determining that obesity was

not a severe impairment where the claimant "did not furnish the ALJ with any medical evidence

showing how the[] alleged impairment[] limited his ability to work"); Mancuso v. Astrue, 361 F.

App'x 176, 178 (2d Cir. 2010) (ALJ did not err in consideration of obesity where "there [was]

no factual basis for thinking that 'any additional and cumulative effects of obesity' limited [the

claimant's] ability to perform light work") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1,

§ 1.00Q); see also Younes v. Colvin, 2015 WL 1524417, at *4 (N.D.N.Y. Apr. 2, 2015) (failure

to address claimant's obesity did not warrant remand where claimant did not claim obesity as a

disabling impairment and failed to identify any limitations occasioned by her obesity in her

briefing before the court).  Thus, the ALJ's failure to address Browne's obesity does not warrant

remand.

    Browne also argues that the ALJ erred by "fail[ing] to consider the side effects of

[Browne's] medications, which [Browne] testified cause him nausea and drowsiness."  Pl. Mem.

at 7 (citing R. 40-41).  In fact, the ALJ did consider the potentially limiting side effects of

Browne's medication.  In his decision, the ALJ wrote that while he found that Browne's allegations are not generally credible, he "nonetheless g[a]ve [Browne] the benefit of the doubt that his medications result in drowsiness," which resulted in the ALJ "further limiting [Browne] to simple and repetitive tasks." R. 15.  Further, although Browne testified that the medication caused nausea, R. 40, his treating physician indicated that the only side effect from his medications was drowsiness, R. 343.  Thus, Browne's argument that the ALJ failed to consider the side effects of his medication is without merit, especially since Browne points to no treatment record in which a medical professional indicates that the side effects of Browne's medications limit his ability to function.

IV.   CONCLUSION

For the foregoing reasons, Commissioner's motion for judgment on the pleadings (Docket # 22) is granted and Browne's motion for judgment on the pleadings (Docket # 15) is denied.  The Clerk is requested to enter judgment and to close this case.

SO ORDERED.

Dated: September 16, 2015
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

22